IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **BRADY BENNETT,** | |
| Plaintiff, | Civil Action No. 1:22-cv-1124 |
| v. | |
| **CHARTER COMMUNICATIONS, INC.,** | **Jury Trial Demanded** |
| Defendant. | |

# COMPLAINT

Brady Bennett ("Mr. Bennett" or "Plaintiff") or by and through his attorneys, Kimmel & Silverman, P.C., alleges the following against Charter Communications, Inc. ("Charter" or "Defendant"):

## INTRODUCTION

1. Plaintiff's Complaint is based on the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227, *et seq.*

## JURISDICTION AND VENUE

2. This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States. See Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 386-87 (2012) (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA).

3. Defendant continuously and systematically transacts business in the State of Texas.

1

4. Defendant, directly and/or through its agents, placed calls to Plaintiff on his 512 area code phone number, which is associated with the greater Austin region, in the State of Texas.

5. Accordingly, Defendant purposefully availed itself to the State of Texas.

6. Accordingly, this Court has both general and personal jurisdiction over Defendant in this matter.

7. Furthermore, the acts and omissions underlying this action occurred in this District and Plaintiff experienced harm, injuries and damages in this District.

8. Accordingly, venue is proper under 28 U.S.C. § 1391(b)(2).

## PARTIES

9. Plaintiff Brady Bennett is an adult citizen, who at all times relevant hereto resided in Cedar Park, Texas 78613.

10. Plaintiff is a "person" as that term is defined by 47 U.S.C. § 153(39).

11. Defendant Charter Communications, Inc. is a Delaware corporation, which maintains its headquarters at 400 Atlantic Street, Stamford, Connecticut 06901.

12. Defendant is a "person" as that term is defined by 47 U.S.C. §153(39)

13. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

## FACTUAL ALLEGATIONS

14. At all times relevant to this lawsuit, Plaintiff, Brady Bennett resided in Cedar Park, Texas.

15. Mr. Bennett owned a cell phone, the number for which was (512) XXX-5325.

16. At all times relevant hereto, Mr. Bennett primarily used that cell phone for residential purposes.

17. Mr. Bennett registered his cell phone number on the Do Not Call Registry on or around November 20, 2008.

18. Plaintiff registered that cell phone number on the Do Not Call list in order to obtain solitude from unwanted telemarketing and solicitation calls.

19. Beginning in or around May 2020 and continuing through the date of the filing of this Complaint, Defendant placed a multitude of telemarketing robocalls to Plaintiff's cell phone, soliciting the sale of Spectrum cable, phone and/or internet plans and services.

20. At no time prior to Charter's above-referenced conduct did Defendant secure Plaintiff's express written consent, or any consent, to place telemarketing calls, or calls that utilize a pre-recorded/automated voice.

21. Plaintiff also did not have an established business relationship with Charter at the time of the subject calls.

22. None of the communications by Defendant were made for "emergency purposes".

23. A substantial majority of the telemarketing calls from Charter to Mr. Bennett began with a pre-recorded message that announced "Spectrum" as the caller, and instructed Plaintiff to "Press '1' to speak with an agent".

24. Being annoyed at receiving the calls and trying to both identify the caller and put a stop to the calls, periodically Plaintiff would do as instructed and press "1" to speak with an agent. He would then ask representatives to identify the company behind the calls. Without exception the response Plaintiff was provided by representatives was that they worked for

"Spectrum" (a Charter d/b/a), to which Plaintiff would clearly an unambiguously make a request to stop calling.

25. The continuous robocalls from charter were disruptive to Plaintiff's daily life.

26. As a result, Plaintiff sent a letter to Charter's legal department in October 2020, advising the calls were in violation of the Telephone Consumer Protection Act.

27. In response, Charter denied that it placed the unlawful calls but assured Mr. Bennett his number was added to its internal do not call list.

28. Unfortunately, after receipt of the letter, Charter continued calling Plaintiff.

29. To this point, Mr. Bennett's verbal and written instructions to stop the calls on multiple occasions, having been conveyed in multiple ways, failed to stop the placing of unlawful telemarketing call.

30. Charter hires call center-vendors (mostly but not exclusively overseas) it designates "resellers."

31. Charter ostensibly instructs its "resellers" not to unlawfully telemarket to consumers, while at the very same time providing financial incentives for those same resellers to telemarket Spectrum services.

32. Specifically, Charter offers "resellers" commissions based on sale volume, and fails to monitor or oversee its resellers for compliance.

33. Accordingly, when resellers successful sell Charter services, Charter substantially profits from those allegedly "prohibited" calls.

34. Defendant tacitly and/or directly encourages unlawful robocalls by its resellers by incentivizing them to behave in the manner reflected above, while at the same time professing intolerance of such practices to the general public.

35. As of the date of the filing of this Complaint, Plaintiff continues to receive numerous telemarketing calls from Defendant.

36. From May 2020 through the filing of this complaint, Charter, by and through its agents, placed at least 19 calls to Mr. Bennett.

37. A list of those calls to Mr. Bennett's cell phone is below:

| Date: | Caller ID: |
|---|---|
| December 4, 2020 | 210-684-5010 |
| January 12, 2021 | 512-848-0041 |
| January 19, 2021 | 512-748-3588 |
| February 24, 2021 | 512-363-4977 |
| March 30, 2021 | 512-245-0544 |
| April 5, 2021 | 512-450-5250 |
| April 13, 2021 | 512-677-8849 |
| April 14, 2021 | 512-756-1013 |
| May 8, 2021 | 512-552-3241 |
| June 9, 2021 | 512-443-0786 |
| August 12, 2021 | 512-445-7669 |
| September 3, 2021 | 512-791-8990 |
| September 28, 2021 | 512-407-7137 |
| November 8, 2021 | 512-451-7619 |
| December 11, 2021 | 512-232-2511 |
| December 28, 2021 | 512-575-6668 |
| February 22, 2022 | 512-612-0496 |
| August 23, 2022 | 512-315-5760 |
| August 23, 2022 | 888-319-1330 |

38. Upon information and belief, Plaintiff received additional calls beyond those identified in the chart above.

39. As a result of the foregoing, Plaintiff experienced disruption, frustration, annoyance, irritation, anger and a sense that his privacy has been invaded by Defendant.

40. The foregoing acts and omissions were in violation of the TCPA.

**Direct and Vicarious Liability**

41. To the extent Charter outsources its illegal robocalling to various agents, call centers and vendors, it is still liable for calls that violate the TCPA.

42. On May 9, 2013, the FCC determined that this was not a basis for avoiding liability within a Declaratory Ruling that held that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

May 2013 FCC Ruling, 28 FCC Rcd at 6588 (internal citations omitted).

43. Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. Id. At 6587 n. 107.

44. The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." Id. At 6593.

6

45. Charter hired, permitted, and enjoyed the benefits of agents, call centers and vendors' mass robocalling.

46. Charter acted as the principal, and the agents, call centers and vendors (whose identities are still unknown) acted as its agents.

47. Charter is not permitted under the law to outsource and contract its way out of liability by directing and benefitting from unlawful robocalls made by agents, call centers and vendors.

48. Because Plaintiff has not yet had the benefit of discovery, it us unknown which of the calls at issue were made by third-party "resellers", and which, if any of the calls were made directly by Charter.

49. To the extent the calls at issue were made by third parties, the calls were made with the express and/or implied permission of and for the benefit of Charter, and or through conduct ratified by Charter, which would render Charter vicariously liable.

50. To the extent certain calls were made directly by Charter, it would be directly liable for those calls.

## COUNT I
## DEFENDANT VIOLATED THE TCPA 47 U.S.C. §227(b)

51. Plaintiff incorporates the forgoing paragraphs as though the same were set forth at length herein.

52. The TCPA prohibits placing calls using an automatic telephone dialing system or automatically generated or prerecorded voice to a cellular telephone except where the caller has the prior express consent of the called party to make such calls or where the call is made for emergency purposes. 47 U.S.C. § 227(b)(1)(A)(iii).

7

53. Defendant initiated multiple telephone calls to Plaintiff's cellular telephone number using a pre-recorded voice.

54. Defendant's calls were not made for "emergency purposes."

55. Defendant's calls to Plaintiff's cellular telephone were made without any prior express consent.

56. Defendant contacted Plaintiff despite the fact that Plaintiff's number has been listed on the Do Not Call Registry since 2008.

57. Defendant's acts as described above were done with malicious, intentional, willful, reckless, wanton and negligent disregard for Plaintiff's rights under the law and with the purpose of harassing Plaintiff.

58. The acts and/or omissions of Defendant were done unfairly, unlawfully, intentionally, deceptively and fraudulently and absent bona fide error, lawful right, legal defense, legal justification or legal excuse.

59. As a result of the above violations of the TCPA, Plaintiff has suffered the losses and damages as set forth above entitling Plaintiff to an award of statutory, actual and trebles damages.

**COUNT II**
**DEFENDANT VIOLATED THE TCPA 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)**

60. Plaintiff incorporates the forgoing paragraphs as though the same were set forth at length herein.

61. The TCPA provides that it is a violation of the law for a person whose phone number is registered on the National Do Not Call Registry to receive more than one solicitation

call on their phone "within any 12-month period by or on behalf of the same entity." See 47 U.S.C. §§ 227(c)(1), (c)(5); 47 C.F.R. § 64.1200(c)(ii).

62. Defendant placed two or more solicitation calls to Plaintiff despite the fact that Plaintiff's number has been on the Do Not Call Registry since November 20, 2008.

63. Defendant's acts as described above were done with malicious, intentional, willful, reckless, wanton and negligent disregard for Plaintiff's rights under the law and with the purpose of harassing Plaintiff.

64. The acts and/or omissions of Defendant were done unfairly, unlawfully, intentionally, deceptively and fraudulently and absent bona fide error, lawful right, legal defense, legal justification or legal excuse.

65. As a result of the above violations of the TCPA, Plaintiff has suffered the losses and damages as set forth above entitling Plaintiff to an award of statutory, actual and trebles damages.

Wherefore, Plaintiff, Brady Bennett, respectfully prays for judgment as follows:

  a. All actual damages Plaintiff suffered (as provided under 47 U.S.C. § 227(b)(3)(A));

  b. Statutory damages of $500.00 per violative telephone call (as provided under 47 U.S.C. § 227(b)(3)(B));

  c. Treble damages of $1,500.00 per violative telephone call (as provided under 47 U.S.C. § 227(b)(3));

  d. Statutory damages of $500.00 per violative telephone call (as provided under 47 U.S.C. § 227(c)(5)(B));

    e.    Additional treble damages of $1,500.00 per violative telephone call (as provided under 47 U.S.C. § 227 (c)(5)(C);

    f.    Injunctive relief (as provided under 47 U.S.C. § 227(b)(3) and (c); &

    g.    Any other relief this Honorable Court deems appropriate.

## DEMAND FOR JURY TRIAL

**Please take notice** that Plaintiff, **Brady Bennett**, demands a jury trial in this case.

Respectfully submitted,

By: */s/ Jacob U. Ginsburg*
JACOB U. GINSBURG, ESQ.
Kimmel & Silverman, PC
30 E. Butler Ave.
Ambler, PA 19002
(215) 540-8888 ext. 104
jginsburg@creditlaw.com
teamkimmel@creditlaw.com

Dated: November 2, 2022